CarutheRS, J.,
delivered the opinion of the Court.
The defendant, Cannon, having executions in his hands as sheriff of Overton county, in favor of the other defendants, for a large amount, against the complainant, Jas. J. Brown, levied the same upon the slaves, Joe and Peter, as his property. Whereupon, this bill was filed by the debtor and his wife and children, to perpetually enjoin the sale, upon the ground that said slaves were not the property of said James Jefferson Brown, but that of his children.
The question depends upon the construction of the will and codicil of Reuben Brown, made in the State of Georgia, in *356 the year 1850. The third clause of the will, so far as it relates to this property, is as follows:
“ I have heretofore given to my son, James Jefferson Brown, in cash, and good property, $2700, and in addition to this amount, I give to his children the following property,” (nine slaves, by their names and ages, including Joe, but not Peter.) “ And my plantation, called and known as the ‘ Good Bun Place,’ in Monroe county, adjoining Ben Watkins’ and Cur-rey’s lands, containing 548 acres, more or less,” with all the stock, tools, &c., on the said land. “And all the above property is not to be found subject to my son’s debts, it, nor its increase, nor proceeds of said slaves nor farm. But to go wholly to the support of his children, and his wife’s support. And at his wife’s death, and the death of my son James Jefferson Brown, then all the above property, and its increase, is to be equally divided between my son’s children.” After .■a bequest of another slave to a grand son, he proceeds : “And '•having the utmost confidence in John H. Thomas, and Jas. .Jefferson Brown, of Overton county, Tennessee, I do constitute them trustees as to the above property I have given to ■my son J. Jef. Brown’s children, and his wife, for their separate support and my son’s.” He then provides for a sale of ¡any of said slaves who may misbehave, by the trustees, who are to reinvest the proceeds in other slaves, and proceeds: “ Also, I give to my son Jas. Jef. Brown, $500 in cash, to be raised out of my estate, and one good bed, furniture and stead, to be worth $60, and when he receives this $500 and the ■bed, that is to constitute his full share of my estate, and he is mot to have'another cent of my estate.”
This will is dated in January, 1850. In September, of the same year, a codicil is attached, which, after referring to his will, its date, and the witnesses to it, and stating that he is desirous of “altering and changing a devise in said will,” .proceeds as follows:
1. “ I revoke and change so much of said will as relates to ■the land as given to my son Jefferson, and all other devises .and bequests whatsoever, except the following negroes, viz: *357 Isaac, Joe, Siller, Peter, Rachel, Moses and his wife Rachel, Emeline, Green and Daniel.
2. “ I give and bequeath to my son Jefferson, $3000, to be paid out of my estate, in lieu of the lands in said will.”
The codicil then proceeds to make, some reference to something he had heard as to the intention of his son Jefferson to “resist” his will, by setting up some independent claim to a portion of his slaves, and provides, -that in the event he does so, all bequests and devises in his favor shall be revoked, &c. This part of the codicil does not reflect any light upon the question of construction now presented, as we think, the contingency referred to not having occurred.
By the will, we consider it very clear, that the slaves and land were given to the children of Jefferson, incumbered with the use for life of their mother expressly, and the said Jefferson, by implication. To secure the rights of the children more effectually, trustees were appointed to protect the property, and to make changes in certain events. The property is expressly guarded against the creditors of Jefferson. The will most explicitly limits his benefits under it to the $500, and bed and furniture.
But it is insisted that his interest in the slaves is enlarged by the codicil. Though this argument is plausible, we think such was not the intention of the testator. The rule on this subject as laid down in 1 Jarman on Wills, 160, we think the correct one; and that is, that the dispositions and provisions of a will is not to be regarded as changed or disturbed by a codicil, any further than is absolutely necessary to give proper effect to the latter.
The only necessary effect of this codicil is, to substitute the slaves therein enumerated, for those bequeathed in the will, and the sum of §3000 for the land. It does not change the character of the title, nor the trusts attached to the property.
Construing the will and codicil together, as we must do under the rule stated, the effect is to attach to- the bequest of the codicil all the trusts and restrictions of the will. The *358 only alteration made, is, as to the property bequeathed; the ownership remains the same. The title to the property in the codicil, then, yests in the children of Jefferson, incumbered with the enjoyment of the use for life by their father and mother.
The codicil taken by itself, would indicate that the land and slaves had been given in the will to his son Jefferson. But that is not so, and it is only by reference to the will that the codicil can be properly understood. Looking at both, however, a>s reflecting light upon each other, and viewing the true intention of the testator, all difficulty is removed, and the apparent inconsistency obviated. This illustrates the wisdom and absolute necessity of the rule, that in asceitaining the meaning of an instrument, all its parts, and even other writings on the same subject, in relation to the same matter, are to be looked to and examined in connection.
It is true, that the slave Peter is not named in the will, but that can make no difference, as the title to him passes in the codicil with the others, to the children, and is connected in like manner with the provisions of the will.
Neither of the slaves levied upon were, therefore, subject to the debts of Jefferson, and the Chancellor correctly held, that the defendants should be perpetually enjoined from selling them for the satisfaction of their executions, against him.
The decree will be affirmed.